**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 10-CR-0048-CVE** |
| | ) | |
| **LARRY G. KOCH, SULLIVAN ERIC** | ) | |
| **JOHNSON, a/k/a "S. Eric Johnson",** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Now before the Court are defendant Larry G. Koch's Motion to Dismiss (Dkt. # 17) and

Defendant Koch's Request for Pretrial Hearing to Determine the Admissibility of Co-Conspirator

Hearsay (Dkt. # 19).

**I.**

Koch and Sullivan Eric Johnson are charged in a two count indictment (Dkt. # 2) with

conspiracy to make false statements and reports to a federally insured institution in violation of 18

U.S.C. §§2, 1014, to execute and attempt to execute a scheme or artifice to obtain funds under the

custody and control of a federally insured institution by false and fraudulent pretenses in violation

of 18 U.S.C. §§ 2, 1344(2), and to commit theft and missapplication by a bank officer and employee

in violation of 18 U.S.C. §§ 2, 656; and willful missapplication of funds in the care and custody of

a federally insured institution, in violation of 18 U.S.C. §§ 2, 656. The indictment was returned on

April 6, 2010.

The indictment charges that Koch was a Vice President of the Bank of Oklahoma (BOk).

Dkt. # 2, at 2. It charges that, as early as November 1999, Johnson represented to BOk that he was

interested in obtaining a loan in order to purchase the Red Arrow Marina from Brad S. Carson. Id. at 1. Carson was also an owner and stockholder of Autumn Home Care Facilities, Inc. (Autumn Home). Id. The indictment alleges that Johnson and Carson agreed that Johnson would purchase the Red Arrow Marina for $1,750,000. Johnson applied for a loan from BOk. The loan required a down payment in the amount of $350,000. Id. at 2.

The indictment alleges that Johnson falsely represented to BOk that he owned shares of Autumn Home. Id. at 4. It alleges that Johnson, Koch, and Carson devised a sham stock sale through which it would appear that Johnson made a $350,000 down payment to Carson by selling him Autumn Home stock. Id. at 5. It further alleges that BOk made the loan to Johnson and that the sale of the Red Arrow Marina occurred on May 18, 2000.

On September 12, 2000, BOk prepared a Suspicious Activity Report. Dkt. # 17-2. The United States Attorney for the Northern District of Oklahoma opened an investigation of Johnson and Carson on October 17, 2000. Dkt. # 17-3, at 1. Throughout 2001 and 2002, the investigation proceeded. The Federal Bureau of Investigation (FBI) and the United States Attorney's office conducted interviews, and the grand jury issued subpoenas. See Dkt. ## 17-5 - 17-12, 17-23. However, there is no evidence of investigative activity between May 7, 2002 and August 8, 2004.

On August 18, 2004 Assistant United States Attorney Charles McLoughlin  met with FBI Special Agent Dana Ward regarding a plan of action. Dkt. # 17-13. The first item on that plan was an interview of Koch. Id. During the remainder of 2004 and in January 2005, the grand jury issued subpoenas and the FBI conducted interviews. Dkt. ## 17-14 - 17-16. On September 27, 2006 FBI Special Agent Dan Risner replaced Ward as the FBI investigator. Dkt. # 23, at 2. After that, there

is no evidence of investigative activity until April 26, 2007, when the FBI conducted an interview. Dkt. # 17-17.  The FBI interviewed Koch on May 22, 2007.  Dkt. # 17-19.

On September 6, 2007, the United States Attorney's Office for the Northern District of Oklahoma was recused from the investigation of Koch.  Dkt. # 17-21.  The United States Attorney's Office for the District of Kansas assumed responsibility for the investigation on September 28, 2007. Dkt. # 23, at 2.  There is no evidence of investigative activity between September 2007 and September 9, 2009 when witnesses testified before the grand jury.  See id.  The indictment was returned on April 6, 2010.  Dkt. # 2.

## II.

Koch seeks dismissal of the indictment because it was returned approximately nine years and eleven months after the BOk loan closed.  Dkt. # 17, at 4.  He argues that, "[a]lthough the indictment is within the 10-year statute of limitations, the government's long and unexplainable delays in its investigation violated [his] due process rights because the delay was intentional and will cause actual prejudice to Mr. Koch in defending the charges against him."  Id.

The applicable statute of limitations is "the primary guarantee against bringing overly stale criminal charges."  United States v. Marion, 404 U.S. 307, 322 (1971) (quoting United States v. Ewell, 383 U.S. 116, 122 (1966)).  However, the statute of limitations "does not fully define [defendants'] rights with respect to the events occurring prior to indictment," Marion, 404 U.S. at 324, and the "Due Process Clause has a limited role to play in protecting against oppressive delay." United States v. Lovasco, 431 U.S. 783, 789 (1977).  Under certain circumstances, undue preindictment delay can violate a defendant's due process rights and require dismissal of the indictment.  See Marion, 404 U.S. at 324 ("we need not . . . determine when and in what

circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution"). Courts must consider "the reasons for the delay as well as the prejudice to the accused." Lovasco, 431 U.S. at 790.

The Tenth Circuit has adopted a two-pronged test to determine whether pre-indictment delay requires dismissal. United States v. Revada, 574 F.2d 1047, 1048 (10th Cir. 1978). A defendant must show actual prejudice resulting from the pre-indictment delay and that the delay "was purposefully designed to gain tactical advantage or to harass" the defendant. United States v. Colonna, 360 F.3d 1169, 1177-78 (10th Cir. 2004); Revada, 574 F.2d at 1048; United States v. Beitscher, 467 F.2d 269, 272 (10th Cir. 1972).

Actual prejudice is "definite and not speculative prejudice." Colonna, 360 F.3d at 1177. Vague or conclusory allegations of prejudice resulting from the passage of time are insufficient. Id. Koch alleges that his defense will be prejudiced because the original cashier's check used in the down payment transaction was destroyed by BOk some time before October 2004. Dkt. # 17, at 4. He states that "the original check would assist his defense." Id. at 17. He also argues that two critical witnesses have died. Karen Johnson, who had recently divorced Carson at the time of the loan closing and allegedly was defendant Johnson's girlfriend, testified at a hearing the week after the loan closing and "made false statements about Mr. Koch's role and knowledge regarding the transaction." Id. at 18. Karen Johnson has died. Further, Carson died in October 2009. Koch argues that "Carson would be either a defendant or a witness, but in any event his presence would have been important to the trial of this case." Id. at 18. Koch also argues that he believes certain potentially helpful records are no longer available, and that the government failed to interview witnesses who could have helped his defense early in the investigation. Id. at 17-18. Koch fails to

explain <u>how</u> this evidence would assist his defense.  His mere assertions that the evidence would or might be helpful are insufficient.  However, even assuming that Koch has made a sufficient showing of prejudice, dismissal would not be required in this case because he has failed to establish the requisite governmental culpability.

Koch argues that the government's delay "constitutes gross negligence at a minimum."  Dkt. # 17, at 19.  He cites <u>United States v. Moran</u>, 759 F.2d 777, 783 (9th Cir. 1985), in which the Ninth Circuit stated that "negligent governmental conduct may form a basis for unconstitutional pre-indictment delay . . . ."  In contrast, Tenth Circuit law requires a defendant to show that the government purposefully or intentionally delayed seeking an indictment in order to prejudice the defendant.  E.g., <u>United States v. Muniz</u>, 1 F.3d 1018, 1024 (10th Cir. 1993) (holding that the district court did not need to hold an evidentiary hearing in order to rule on a pre-indictment delay allegation where the defendant "made no specific allegations how the government had intentionally delayed seeking an indictment in order to prejudice the defendant"); <u>see also</u> <u>Colonna</u>, 360 F.3d at 1177 ("nor has [defendant] demonstrated that the government purposefully delayed joining [the contested charge] in order to gain a tactical advantage").

Koch identifies "several notable periods of inactivity" in the investigation.  First, the period between May 2002 and August 2004; second, the period from January 2005 to April 2007; and third, the period after the investigation was transferred to the District of Kansas and before the indictment was returned.  Dkt. # 17, at 9.  The government has provided some evidence of additional investigative activity during these periods; however, the government does not explain the two years of inactivity from September 2007 to September 2009.

Koch has presented evidence that could establish negligence or a lack of diligence on the government's part. However, he has presented no evidence that these periods of inactivity were due to anything more than negligence. He has presented no evidence that the government purposefully delayed bringing the indictment in order to gain a tactical advantage. Because he has failed to make such a showing, he is not entitled to dismissal of the indictment based on preindictment delay.

### III.

Koch also requests a pretrial hearing before any alleged co-conspirator statements may be used against him at trial. Dkt. # 19. The government argues that some of these statements are statements against interest and should not be subject to a co-conspirator hearsay analysis.

Under Rule 801(d)(2)(E), a statement is not considered hearsay if the court finds that "(1) a conspiracy existed; (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy." United States v. Eads, 191 F.3d 1206 (10th Cir. 1999) (quoting United States v. Caro, 965 F.2d 1548, 1557 (10th Cir. 1992)). For Rule 801(d)(2)(E) to apply, the government must establish the existence of a conspiracy at some point in its case-in-chief, or the statements must be excluded. United States v. Katz, 705 F.2d 1237 (10th Cir. 1983). The Court "can only admit coconspirator statements if it holds a James hearing [before trial] or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267 (10th Cir. 2007) (quoting United States v. Owens, 70 F.3d 1118 (10th Cir. 1995)). A district court may rely on the statements and observations of other co-conspirators to support its finding that a conspiracy existed. Owens, 70 F.3d at 1124-25. If a co-conspirator statement is admissible under Fed. R. Evid. 801(d)(2)(E), the

6

requirements of the Confrontation Clause of the Sixth Amendment are also satisfied.  United States

v. Molina, 75 F.3d 600, 603 (10th Cir. 1996).

This Court does not routinely hold a pretrial hearing to determine the admissibility of co-conspirator statements and finds that such a hearing is not necessary in this case.  Instead, the Court will follow its standard practice and consider the admissibility of co-conspirator statements at trial.  However, this Court does not preliminarily admit co-conspirator statements.  Before attempting to offer any co-conspirator statements at trial, the government must produce sufficient evidence for the Court to find by a preponderance of the evidence that a conspiracy existed.  Before the government attempts to offer a co-conspirator's statement at trial, it must request a hearing outside of the presence of the jury and the Court will make specific findings as to whether the government has established the existence of a conspiracy by a preponderance of the evidence.  This will protect Koch from any risk that the jury will hear co-conspirator statements before the Court has determined that a conspiracy existed.  However, Koch's request for a pretrial hearing concerning the admissibility of co-conspirator statements is denied.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss (Dkt. # 17) and Defendant Koch's Request for Pretrial Hearing to Determine the Admissibility of Co-Conspirator Hearsay (Dkt. # 19) are **denied**.

**IT IS SO ORDERED** this 24th day of May, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

7