## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CR-0048-CVE |
| | ) | |
| LARRY G. KOCH and | ) | |
| SULLIVAN ERIC JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On October 1, 2010, following conviction by a jury, Larry G. Koch was sentenced to 60 months probation. The government requested an award of restitution in the amount of $1,120,000, but defendant argued that either a lesser amount or no restitution was owed. The Court determined that the victim's losses were not ascertainable as of the date of sentencing and, citing its authority under 18 U.S.C. § 3664(d)(5), took the issue of restitution under advisement. However, the Court entered judgment and commitment (Dkt. # 80) as to all other sentencing issues. Koch's co-defendant, Sullivan Eric Johnson, was sentenced on October 7, 2010 (Dkt. # 84), and the Court also took the issue of restitution under advisement as to Johnson. An evidentiary hearing as to the appropriate amount of restitution was held on November 16, 2010.

## I.

Koch and Johnson were charged with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (count one), and misapplication of funds by a bank officer in violation of 18 U.S.C. § 656 (count two). This case arose out of a loan made by the Bank of Oklahoma (BOk) to Johnson for the purchase of the Red Arrow Marina (the Marina) near Afton,

Oklahoma.  Prior to May 2000, the Marina was owned by Brad S. Carson, who agreed to sell the Marina to Johnson.  Carson and Johnson agreed to inflate the purchase price of the Marina to increase the amount of the loan and provide Johnson working capital to operate the Marina.  The agreed sale price was $1,750,000, but Johnson could not obtain a loan without a 20 percent, or $350,000, down payment.  Koch was the vice president, corporate vice president, and market president for the Grove branch of BOk.  BOk agreed to loan Johnson $1,400,000 to purchase the Marina, but the loan required a Small Business Administration (SBA) guarantee.  Koch informed Johnson and Carson  that the SBA required that the down payment be made in cash.  Johnson and Carson swapped checks for the amount of the down payment to make it appear that Johnson actually made the down payment, but no funds were exchanged between Johnson and Carson.  The government alleged that Koch was aware of the fraudulent scheme to obtain the loan from BOk, and participated in the conspiracy by processing the loan even though he was allegedly aware that Johnson and Carson swapped checks.

Johnson entered a plea agreement with the government and pled guilty to count one of the indictment.  The plea agreement included an agreement as to the amount of restitution, and Johnson and the government agreed to restitution in the amount of $1,157,241.  They also agreed that the restitution would be offset by any amounts paid by Koch or the Estate of Brad Carson.[1]  Koch exercised his right to a jury trial.  The jury found Koch guilty of count one and not guilty as to count two, and the key evidence against Koch at trial was Johnson's testimony.  In particular, Johnson testified that Koch was aware of the check swap but said that "he didn't want to know anything

---

[1]     Carson was not a defendant in this case because he is deceased.  BOk has sued Johnson and the Estate of Brad Carson in state court for the collection of the indebtedness.

about it." Dkt. # 55, at 45.  Johnson also testified that Koch encouraged him to go ahead with the check swap and that Koch used his authority as a BOk employee to cause BOk to issue an official check covering the amount of Carson's $350,000 check to Johnson, even though Koch allegedly knew that Carson did not have sufficient funds for the check.  Dkt. # 55, at 48; Dkt. # 57, at 39-40.

Koch's sentencing hearing was set for October 1, 2010, and Johnson's sentencing hearing was set for October 7, 2010.  Prior to Koch's sentencing hearing, the United States Probation Office prepared a presentence investigation report (PSR).  The PSR stated that Koch's total offense level was 19 and he fell within criminal history category I, and the advisory guidelines provided for a sentence of 30 to 37 months imprisonment.  The Court varied downward and sentenced defendant to 60 months probation.  Dkt. # 80.  Johnson's PSR stated that his total offense level was 21 and he fell within criminal history category I, and his advisory guideline sentencing range was 37 to 46 months imprisonment.  The government moved for a downward departure based on Johnson's substantial assistance (Dkt. # 72) and Johnson requested a downward variance (Dkt. # 76).  The Court granted both motions, and Johnson was also sentenced to 60 months probation.  Dkt. # 84.  However, the Court took the issue of restitution under advisement as to both defendants.  The government asked the Court to order Koch to pay $1,120,000 in restitution to BOk.  This sum represents the amount of the loan ($1,400,000), minus the amount recovered at a public auction of the Marina in 2005 ($280,000).  However, Koch's counsel argued that BOk came into constructive possession of the Marina well before it was sold at a public auction in 2005, and the "value" of the Marina should be determined from the date when it was "returned" to or possessed by BOk.  The Court entered a judgment and commitment for each defendant without any restitution and, relying

on its authority under 18 U.S.C. § 3664(d)(5), deferred the restitution order and set an evidentiary hearing to determine the amount of restitution owed to BOk by each defendant.

At the evidentiary hearing, Koch presented evidence showing that BOk initiated a foreclosure action against Red Arrow Marina Sales & Services, Inc. and Johnson in the District Court of Delaware County, Oklahoma on September 15, 2000.  See Def. Ex. 1, at 2.  On April 20, 2001, BOk filed a motion for partial summary judgment and the state court granted the motion on June 6, 2001, by agreement of the parties.  Id.  The state court issued an order of sale on June 11, 2002 and the Marina was appraised at a value of $1,585,000.  Gov't Ex. 1, at 2.  The Delaware County Sheriff held a sale on September 10, 2002, but no bids were made were for the Marina.  A second Sheriff's sale was held on November 7, 2002, but the Marina was not sold.  The property was re-appraised for $975,000 and Sheriff's sales were held on June 3 and July 29, 2003, but no bids were made at either sale and the property was not sold.  Id.  On October 22, 2003, the Marina was re-appraised at a value of $750,000.  Id. at 3.  Another Sheriff's sale was held on December 2, 2003, but no bids were made and the Marina did not sell.  Id.  The property was appraised for final time on March 4, 2005, and the appraised value had declined to $350,000.  Id.  A sixth and final Sheriff's sale was held on April 12, 2005, but no bids were submitted and the Marina was not sold.  Id.  On May 2, 2005, BOk asked the state court to appoint a receiver for the purpose of selling the Marina at a public auction.  Def. Ex. 1, at 4-5.  The state court granted the motion.  Id. at 5.  On November 10, 2005, the receiver sold the Marina for $280,000 at a public auction.  Id.; Gov't Ex. 1, at 3.

Johnson testified at the evidentiary hearing concerning his interaction with BOk after he defaulted on the loan and the foreclosure action was filed.  Johnson volunteered to operate the Marina after the default, and he agreed to pay insurance premiums, taxes, and permit fees from

4

revenue generated by the Marina. He did not receive a salary from BOk and the Marina operated at a loss, and he was eventually unable to pay the expenses associated with operating the Marina. Johnson asked BOk to pay these expenses, but he testified that BOk refused to provide any financial support or failed to respond to his requests. The Grand River Dam Authority threatened to close the Marina and Johnson notified BOk, but BOk took no action to pay insurance premiums, taxes, or permit fees. Johnson provided financial reports and statements to BOk when this information was requested, but he testified that BOk did not supervise the day-to-day operation of the Marina.

Johnson also testified that BOk transferred the loan from its Grove branch to its Special Assets Department, and Johnson dealt with David Jackson of the Special Assets Department. After the foreclosure action was filed, Johnson testified that he offered to provide a deed-in-lieu of foreclosure to BOk, but BOk did not respond to his offer. He does not recall precisely when he made this offer to BOk, but testified that he offered to provide a deed-in-lieu after the foreclosure action was filed. Johnson attended each of the Sheriff's sales and a representative of BOK attended some of the sales. BOk never bid in the amount of its judgment at any of the Sheriff's sales. Johnson tried to market the Marina independently of the Sheriff's sales and BOk did not oppose his efforts to sell the Marina, but Johnson's attempts to sell the Marina were unsuccessful.

The government asks the Court to order Koch to pay restitution in the amount of $1,120,000, because this represents the full amount of BOk's loss and there is no evidence that BOk took any action that contributed to the decline in value of the Marina. Dkt. # 91, at 1-2. Koch argues that BOk received constructive possession of the property as early as June 6, 2001, when the state court entered partial summary judgment in favor of BOk and BOk received the right to dispose of the Marina. Dkt. # 92, at 5. He claims that he owes no restitution to BOk because the value of the

Marina exceeded the value of the loan at that time, and BOk did not suffer a loss that requires an award of restitution.  If the Court finds that some award of restitution is appropriate, Koch asks the Court to reduce the amount of restitution assessed against him to reflect his relative culpability in the scheme to defraud BOk.  Id. at 2.  Johnson asks the Court to reduce his restitution obligation if the Court finds that BOk's loss is less than the amount he agreed to pay in his plea agreement.  Dkt. # 93, at 2.  However, Johnson is clear that he is not asking the Court to "unwind" his plea agreement with the government.

## II.

Under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A-3664 (MVRA), a defendant is required to pay restitution if convicted of certain offenses.  United States v. Martinez, 610 F.3d 1216, 1230 (10th Cir. 2010).  In this, case, the parties do not dispute that restitution is mandatory under 18 U.S.C. § 3663A(c).  The MVRA is clear that a district court "shall order restitution to each victim in the full amount of each victim's losses as determined by court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1). The district court must determine the "actual loss" to the victim, rather than the "intended loss," when calculating the award of restitution.  United States v. Squirrel, 588 F.3d 207, 212 (4th Cir. 2009).  In cases involving the loss of property, the MVRA requires the defendant to return the property to the owner or:

> if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to--
>
> (i) the greater of--
>
> > (I) the value of the property on the date of the damage, loss, or destruction; or

> (II) the value of the property on the date of sentencing, less

> (ii) the value (as of the date the property is returned) of any part of the property that is returned . . . .

18 U.S.C. § 3663A(b)(1)(A).  The Tenth Circuit has stated that the statute informs the district court what to value and the date from which the property's value should be assessed, but it does not tell the Court how to assess that value.  United States v. James, 564 F.3d 1237, 1245 (10th Cir. 2009).  The offset value of the property is determined based on the "value" of the property on the date it is "returned."  Id.  The district court has the discretion to consider other methods of valuation other than "fair market value" in appropriate cases.  Id.  The government bears the burden to prove the victim's actual loss, but a district court should "reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim."  United States v. Parker, 553 F.3d 1309, 1323 (10th Cir. 2009).

As a threshold matter, the Court must determine what "property," as that term is defined by by § 3663A, the Court is being asked to value for offset against the amount of the loan.  Johnson and Koch were convicted of conspiracy to commit an offense against the United States for fraudulently inducing a federally insured bank to make a loan.  In cases involving fraudulent loans and losses suffered by secured lenders, courts have not strictly construed "property" to mean only the money transferred by the lender to the defendants, but have considered secured collateral as property that can be "returned" to the victim.  See United States v. Boccagna, 450 F.3d 107, 113 n.2 (2d Cir. 2006).  In James, the Tenth Circuit impliedly treated a home sold at a foreclosure sale as "property" when calculating the amount of restitution, and found that it was reasonable for the district court to deduct the value of the home from the amount of restitution owed by the defendant.  James, 564 F.3d at 1246-47.  The Fifth Circuit Court of Appeals  has held that collateral used to secure a loan is not

7

"property" under the Victim and Witness Protection Act, 18 U.S.C. § 3663 (VWPA).[2] <u>United States v. Campbell</u>, 106 F.3d 64, 69-70 (5th Cir. 1997).  However, it does not appear that any other circuit court of appeals has followed <u>Campbell</u>, and the majority approach is to offset any award of restitution by the "value" of collateral used to secure of a loan.  <u>See</u> <u>United States v. Statman</u>, 604 F.3d 529 (8th Cir. 2010); <u>United States v. Gossi</u>, 608 F.3d 574, 577-78 (9th Cir. 2010); <u>Boccagna</u>, 450 F.3d at 112-13.  The Court finds that the Tenth Circuit would treat collateral used to secure a mortgage as "property" under § 3663A, and will consider Koch's arguments that the auction amount underrepresents the value of the Marina when it was returned to BOk.  <u>See</u> <u>James</u>, 564 F.3d at 1246; <u>United States v. Williams</u>, 292 F.3d 681, 689 (10th Cir. 2002) (reversing the district court's restitution award due to a failure to consider the value of tools pledged to a secured lender as an offset against the award of restitution).

The parties disagree as to how the Court should calculate BOk's loss.  The government asks the court to exercise its discretion to "award[] the greatest amount reasonable under the facts," and argues that the Court should not rely on any assessed values or appraisals higher than the value for which the Marina actually sold.  Dkt. # 91, at 4.  The government suggests that $1,120,000 is the appropriate amount of restitution, because BOk diligently attempted to sell the Marina as part of the foreclosure action.  There is no dispute that the Marina was offered for sale six times as part of the foreclosure action, but no bids for the Marina were submitted at any of the Sheriff's sales.  The government asserts that the only accurate measure of BOk's loss is the difference between the loan

---

[2]      The VWPA was a predecessor statute to the MVRA, but cases interpreting identical language in the VWPA may be considered when interpreting the language of the MVRA. <u>United States v. Wilfong</u>, 551 F.3d 1182, 1885 (10th Cir. 2008).  The term "property" is used in both statutes and <u>Campbell</u> is relevant persuasive authority.

amount ($1,400,000) and the price paid for the Marina at a public auction ($280,000).   No representative of BOk appeared at the evidentiary hearing and the only evidence offered by the government was the affidavit of Tom Eaton, a vice president of BOk.  The government asks the Court to treat any appraisals of the Marina obtained before the foreclosure action as questionable due to Johnson and Carson's scheme to inflate the value of the loan.[3]  Id.

Koch responds that the value of the Marina exceeded the amount of the loan when BOk took constructive possession of the Marina on June 6, 2001, but BOk refused to take title to the Marina and failed to protect the value of the Marina after obtaining partial summary judgment in the foreclosure action.  Koch argues that BOk avoided taking any action that would transfer title to BOk or show that BOk had control over the Marina due to potential liability that could result from owning and operating a Marina.  Dkt. # 92, at 4.  BOk never bid in the amount of its judgment at any of the six Sheriff's sales, and Koch argues that this was evidence of a deliberate effort by BOk to avoid taking title to the Marina.  Koch claims that BOk's deliberate failure to take title to the Marina led to the diminution of the Marina's value, and Koch should not be held liable as the guarantor of the Marina's value when BOk was in constructive possession of the Marina.  Koch also asserts that BOk derived a benefit by leaving Johnson in control of the Marina, under BOk's supervision,

---

[3]     The Court agrees with the government on this point and will not rely on any appraised value of the Marina before the foreclosure action was filed.  Koch has submitted a copy of an appraisal of the Marina dated March 11, 1998.  Def. Ex. 2.  He has also provided a May 1, 2000 appraisal valuing the Marina at $1,900,000.  Def. Ex. 3, at 60-113.  It is likely that Carson and Johnson intended to inflate the value of the Marina, at least as to the May 1, 2000 appraisal, and the Court finds that the May 1, 2000 appraisal is of no assistance when determining the amount of BOk's loss.  There is no evidence that Carson took any action to inflate the value of the Marina for the March 11, 1998 appraisal, but this appraisal does not reflect the value of the Marina during any relevant time period.

because BOk did not have to pay insurance premiums, taxes, or permit fees to maintain the Marina as a going concern.

Koch cites <u>Boccagna</u> to support his argument that the Marina should be valued at the time BOk took constructive possession of the Marina.  In <u>Boccagna</u>, the United States Department of Housing and Urban Development (HUD) insured loans for 162 distressed properties in New York City.  450 F.3d at 110.  However, the loans were made as part of a fraudulent scheme created by Francis Boccagna.  Boccagna intended to use nominal not-for-profit purchasers to evade restrictions on the number of distressed properties he could purchase under HUD regulations, and he planned to quickly rehabilitate and resell the properties at a higher price.  Boccagna could not sell the properties quickly enough due to New York City's extensive zoning regulations, and he defaulted on the loans.  <u>Id</u>.  HUD lost $20,609,746 as a result of Boccagna's default, but it was able to acquire title to 53 of the properties.  HUD sold them to the New York City Department of Housing Preservation and Development for a total of $1,980,030, but this amount was well below the market value of the properties.  <u>Id.</u>  Boccagna pled guilty to making a false statement to influence the lending decision of a federally insured financial institution in violation of 18 U.S.C. § 1014, and restitution was mandatory under § 3663A.

The government sought restitution on behalf of HUD and argued that the appropriate measure of restitution was the difference between HUD's out-of-pocket loss, $20,609,746, and the sale price of the 53 properties to which HUD obtained title, $1,980,030, for a requested restitution award of $18,629,716.  The district court agreed and awarded HUD $18,629,716 in restitution.  <u>Id.</u> at 112.  The Second Circuit reversed the award of restitution and remanded the case for recalculation of the amount of restitution.  The fair market value of the 53 properties was significantly higher than

10

the nominal or "gift" value for which HUD sold the properties, and restitution should have been determined using the fair market value at the time HUD actually acquired the properties. Id. at 113. The Second Circuit rejected the government's argument that the district court had discretion to rely on the nominal resale value of the properties without considering the higher fair market value, and stated that the parties should be prepared to present evidence concerning the value of the property when HUD took title. Id. at 113. When determining the value of the property, the Second Circuit stated that fair market value would ordinarily be the preferred method of valuation, but other methods may be appropriate in certain cases to achieve the goals of the MVRA. Id. at 115-16. However, the victim is not entitled to be placed in a better position following an award of restitution, and the goal of restitution is to compensate the victim for the amount of the loss only. Id. at 117. The Second Circuit directed the district court to determine the amount of restitution by comparing HUD's loss to the amount a willing buyer would have paid for the 53 properties in an arms-length transaction on the open market. Id. at 118.

The Court finds that the government has shown that some award of restitution against Koch is appropriate, because it is clear that BOk suffered a loss as a result of defendants' conduct and restitution is mandatory under the MVRA. However, this does not mean that Johnson's unpaid indebtedness is automatically the proper measure of BOk's loss. The parties do not dispute that the amount of the loan represents the appropriate starting point when calculating the amount of restitution, but disagree as to how the Court should calculate BOk's actual loss. The government argues that the difference between the unpaid balance of the loan and the amount BOk received from public auction of the collateral should be awarded as the amount of the loss. However, the government has the burden to prove the victim's actual loss, and the government does not address

Koch's argument that the Marina was constructively possessed by BOk on June 6, 2001, by virtue of the state court's entry of partial summary judgment in favor of BOk in the foreclosure action. Under Boccagna and James, it is clear that the Court cannot simply accept the government's assertion of BOk's actual loss. BOk obtained certain rights over the Marina in the foreclosure action and Johnson's testimony establishes that BOk exercised supervisory authority over the Marina after June 6, 2001. At a minimum, BOk chose to leave Johnson in charge of the day-to-day operations of the Marina, even though Johnson offered to return the Marina to BOk by executing a deed-in-lieu of foreclosure. Thus, BOk could have taken title to the Marina at any time after June 6, 2001 and, through Johnson, could have taken steps to maintain or improve the value of the Marina. The Court is satisfied that the property was "returned" to BOk for the purpose of § 3663A(b)(1)(A), and the amount of the loss should be adjusted to reflect the value of the Marina when it was returned to BOk.

The evidence shows that BOk took minimal steps to preserve the value of the Marina after the state court entered judgment in its favor. Koch criticizes BOk for failing to take title to the Marina and claims that BOk was attempting to avoid liability associated with ownership. This could have been a business decision by BOk to limit its loss, and is not necessarily evidence that BOk negligently allowed the value of the Marina to decline. It was not unreasonable for BOk to initially rely on the forclosure sale process to dispose of the Marina, as this is a standard way for a bank to recover some or all of its loss after a party has defaulted on a loan. At some point, BOk's reliance on this process became unreasonable. The state court authorized six Sheriff's sales of the Marina, and no bids were made at any of these sales. Each appraisal during this process reflected that the value of the Marina was declining, but BOk took no additional action to preserve the value of its

collateral or take title to the Marina for sale on the open market.  In fact, BOk allowed Johnson to operate the Marina even after Johnson was unable to pay insurance premiums, taxes, and permit fees, and Johnson testified that BOk was aware that he could not make these payments.  This is sufficient to establish some neglect on the part of BOk in the maintenance of its collateral, and the amount of the loss should be reduced to reflect that BOk's conduct was, in part, responsible for the decline in the value of the Marina.

The Court finds, based on the evidence, that the Marina should be valued at $750,000 when calculating BOk's actual loss.  This represents the appraised value of the property on October 22, 2003, when the property was re-appraised following the fourth scheduled Sheriff's sale.  It was reasonable for BOk to attempt to sell the Marina at a foreclosure sale after the Marina was initially assessed at a value of $1,585,000.  BOk could have reasonably believed that the value of the Marina exceeded the amount of the loan and that it could recover the full amount of its loss through a Sheriff's sale.  Even though no bids were received at the first or second Sheriff's sale, it was also not unreasonable for BOk to have the property re-appraised and to attempt to sell the property at a third or fourth Sheriff's sale.  However, the second appraisal at $975,000 put BOk on notice that the Marina was declining in value, and BOk could not indefinitely rely on a forced sale to obtain a return on its collateral.  BOk requested a new appraisal after the third and fourth Sheriff's sales were unsuccessful, and the value of the Marina had declined to $750,000.  At this point, BOk was clearly on notice that the Marina had dramatically decreased in value, but there is no evidence that BOk took any steps to preserve the value of its collateral.  This is coupled with evidence that BOk limited Johnson's authority to operate the Marina and received financial reports from Johnson showing that the Marina was unable to pay its insurance premiums, taxes, and permit fees.  It would be

13

unreasonable for the Court to make Koch a guarantor of the Marina's value indefinitely when there is no evidence that BOk was attempting to preserve the value of its collateral. The Court also notes that it the government's burden to prove the value of the victim's actual loss, and the only evidence provided by the government, Eaton's affidavit, contains no explanation of BOk's conduct after its judgment in the foreclosure action. Defendant has produced evidence challenging the reasonableness of BOk's conduct, and the government has failed to meet its burden to show that BOk's actual loss was $1,120,000.

The Court finds that the amount of BOk's loss is $650,000. The Court has determined that the Marina should be valued at $750,000, and this amount should be subtracted from the $1,400,000 indebtedness. This results in a loss amount of $650,000. Defendants do not get the benefit of an additional reduction or setoff in the amount of $280,000. The $280,000 represents an alternate measure of the Marina's value, not an additional benefit received by BOk, and defendants do not receive credit for this amount.

The parties' briefing raises two additional issues that must also be considered. First, the Court must determine if Johnson receives the benefit of the award of restitution determined as to Koch, even though Johnson agreed to pay a higher amount in his plea agreement with the government. Second, Koch argues that the Court should apportion the amount of the loss between the defendants to reflect Koch's minimal role in the conspiracy.

Johnson argues that the Court's determination of restitution as to Koch has a bearing on the amount of restitution he owes to BOk, and he has adopted the arguments asserted by Koch. However, he states that he is not asking the Court to "unwind" his plea agreement with the government. Dkt. # 93, at 2. The Court notes that it is not bound by the terms of the plea agreement

and it does not have to enter an award of restitution in the amount agreed in the plea agreement.  See United States v. Voss, 165 Fed. Appx. 647 (10th Cir. Feb. 3, 2006).[4]  The Court finds that it may not order Johnson to pay restitution in the amount of $1,157,241, because the Court has determined that BOk suffered a loss of only $650,000.  United States v. Smith, 156 F.3d 1046, 1057 (10th Cir. 1998) ("a district court may not order restitution in an amount that exceeds the loss caused by the defendant's conduct).  Strict compliance with the plea agreement would result in the imposition of an illegal sentence, because the plea agreement would require Johnson to pay BOk more than its actual loss.  United States v. Griffith, 584 F.3d 1004, 1019 (10th Cir. 2009).  Thus, Johnson may not be obligated to pay more than $650,000 in restitution to BOk, and this does not result in an "unwinding" of the plea agreement.

In cases involving multiple defendants, the Court has the authority to consider whether each defendant should be required to pay the full amount of restitution or if this amount should be apportioned among the defendants.  Under 18 U.S.C. § 3664(h), "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."  A district court has the discretion to take a defendant's level of contribution to the total loss into account and apportion the loss accordingly among multiple co-defendants.  United States v. Matos, 611 F.3d 31, 44 (1st Cir. 2010); United States v. Nucci, 364 F.3d 419, 422 (2d Cir. 2004).  However, a district court is not required to apportion restitution among defendants and may impose the full

---

[4]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

15

amount of restitution against each defendant if they contributed to the victim's loss.  United States v. Bogart, 576 F.3d 565, 576 (6th Cir. 2009).

In this case, it is appropriate to apportion liability for restitution between Koch and Johnson to account for their level of contribution to BOk's loss.  Koch's PSR states that he "never received nor intended to receive any personal monetary benefit [and] [t]he defendant's lack of personal profit and motivation for involvement in the crime is relevant to the nature of the offense and determination of the defendant's degree of culpability in the offense."  PSR of Larry G. Koch, at 18. However, Johnson received a two level enhancement for receiving a direct financial benefit of more than $1,000,000 from the criminal conduct.  PSR of Sullivan Eric Johnson, at 8.  Johnson's plea agreement also contains an agreement with the government that he owes restitution in the amount of $1,157,241, and this was a relevant consideration for the Court when it varied downward and sentenced Johnson to probation.  See Dkt. # 31, at 5-6. Although Johnson receives the benefit of the Court's findings that BOk's loss is less than $1,120,000, the Court finds that Johnson should be required to shoulder more of the burden for restitution than Koch because of Johnson's level of culpability and contribution to the loss.

Johnson was a key actor in the scheme to defraud BOk and received a direct financial benefit from the scheme, and he is obligated to pay restitution in full amount of BOk's loss.  However, Koch played a less active role in the conspiracy and received no financial benefit from the scheme.  Koch did not participate in the initial stages of the conspiracy and learned of the conspiracy only after Carson and Johnson crafted the fraudulent scheme to transfer ownership of the Marina.  The key evidence against Koch is that he was aware of a check swap engineered by Carson and Johnson and took no action to stop the loan from being funded.  The jury found Koch guilty of conspiracy to

16

commit an offense against the United States, but the evidence presented at trial showed that Carson and Johnson played more significant roles in the conspiracy.  Although the jury found that Koch joined the conspiracy, it would not be reasonable to order Koch to pay restitution for the full amount of BOk's loss.  Johnson is ordered to pay restitution in the amount of $650,000, or the full amount of BOk's loss, and Koch is ordered to pay restitution in the amount of $100,000 to reflect his lesser culpability for BOk's loss.

**IT IS THEREFORE ORDERED** that Koch is ordered to pay restitution to BOk in the amount of $100,000, and Johnson is ordered to pay restitution to BOk in the amount of $650,000, jointly and severally up to $100,000.  Amended judgments and commitments as to Koch and Johnson will be entered.

**DATED** this 13th day of December, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

17